**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2163-16T1

A.F.,

    Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE AND
HEALTH SERVICES and MORRIS COUNTY
BOARD OF SOCIAL SERVICES,

    Respondents-Respondents.

_____

Argued April 11, 2018 – Decided July 23, 2018

Before Judges Fuentes and Manahan.

On appeal from the Division of Medical
Assistance and Health Services.

Lawrence S. Berger argued the cause for
appellant (Berger & Bornstein, LLC, attorneys;
Lawrence S. Berger, on the brief).

Caroline Gargione, Deputy Attorney General,
argued the cause for respondent Division of
Medical Assistance and Health Services (Gurbir
S. Grewal, Attorney General, attorney; Melissa
H. Raksa, Assistant Attorney General, of
counsel; Caroline Gargione, on the brief).

Johnson & Johnson, attorneys for respondent
Morris County Board of Social Services, join

in the brief of respondent Division of Medical Assistance and Health Services.

PER CURIAM

A.F. suffered an accident twenty years ago that caused severe injuries to her cervical spine. As a result of this accident, she is quadriplegic. It is undisputed that A.F. is totally disabled and needs personal assistance to perform the personal, social, and biological functions of daily living. She depends upon Medicaid benefits to provide her with the assistance she needs. On December 9, 2016, the Director of the State Department of Human Services, Division of Medical Assistance and Health Services, issued an order upholding the termination of A.F.'s Medicaid benefits. A.F. now appeals from this order arguing that the Director's decision was arbitrary, capricious, and unreasonable, and violated the procedures established in our State's administrative code for redetermining a Medicaid recipient's eligibility to continue to receive benefits.

The Director argues the Morris County Board of Social Services (Board) properly terminated A.F.'s Medicaid benefits because she failed to provide the Board with necessary information to verify her continued eligibility to receive benefits. The Director also argues that A.F.'s argument based on the Board's failure to follow

established regulatory procedures before terminating her benefits is "outside the scope of this appeal."

After reviewing the record developed by the parties and mindful of prevailing legal standards, we reverse. The Board's failure to follow the procedures codified in N.J.A.C. 10:71-8.1 are not outside the scope of the issues before this court. These irregularities contributed to the misinformation undermining the Board's decision to deny A.F.'s redetermination application and ultimately formed the basis for the wrongful termination of A.F.'s Medicaid benefits. The Director's decision was thereafter materially tainted by the Board's threshold error. Finally, the Director failed to give due deference to the Administrative Law Judge's (ALJ) findings. Consequently, the Director's decision and order terminating A.F.'s Medicaid benefits must be vacated as arbitrary, capricious, and unreasonable.

I

The Board is required to redetermine a recipient's eligibility to receive Medicaid benefits "at least once every 12 months." N.J.A.C. 10:71-8.1(a). On January 12, 2016, the Board's "Human Service Specialist" sent A.F. a form-letter that stated: "In order to determine eligibility for the MEDICAID Program(s), we require the following verification[.]" The Form contained a number of categories of information with boxes next to them. Three

categories were checked with an "X," requiring A.F. to provide the following: (1) Verification of Address — Utility Bill; (2) a completed PA-1G-NJR2 forms for September 2014, and September 2015 redetermination; and (3) copies of September 2014, and September 2015 bank statements.

The form-letter directed A.F. to return "the necessary information IMMEDIATELY" by regular mail or email to Ms. Garcia, and provided Garcia's email address and fax number. The form-letter concluded with the following admonition:

> If you do not respond [by] **01/22/2016** we will have to assume that you are no longer in need of assistance and you will not receive benefits. If you have any questions, or cannot provide necessary information, please contact your caseworker at the number listed above. We will be happy to help you in any way that we can.

The record shows that A.F. responded and provided the information requested on February 10, 2016.

In a second identically formatted letter dated March 11, 2016, the Board placed an "X" next to the boxes requesting the following information: (1) completed PA-1G-NJR2 forms for September 2014 redetermination; and (2) "Life Insurances: Banner Acct. # _____ and Transamerica Acc.# _____."[1] The Board did

---

[1] We have not included the actual account numbers to protect appellant's privacy.

not provide any additional information concerning these two insurance policies or explain how they related to A.F.'s redetermination for Medicaid eligibility. The March 11, 2016 form-letter gave A.F. until <u>March 22, 2016</u> to respond and concluded with the same admonition. According to A.F., she did not receive the Board's letter until March 15, 2016.

For reasons not disclosed in this record, A.F. did not respond to the Board's request nor make any effort to contact the caseworker by phone, mail, or email to solicit more information on the nature of the requested information or request an extension of the deadline to provide the relevant documents. In a letter dated April 28, 2016, the Board terminated A.F.'s Medicaid assistance. The form-letter stated: "This action was taken for the following reason: CLIENT DID NOT SUPPLY LIFE INSURANCE INFORMATION." The form-letter apprised A.F. that she had twenty days to request a fair hearing and again included the telephone number of caseworker Garcia.

In a letter also dated April 28, 2016, A.F.'s attorney advised caseworker Garcia that he was "not clear as to what information is being requested." Counsel asserted that A.F. did not have insurance policies on her life. However, counsel disclosed that he had obtained two life insurance policies with Transamerica and Banner on his life, naming A.F. as beneficiary on both policies.

Counsel also noted that the policy or account numbers listed in the Board's March 11, 2016 letter "did not match up with any policies that we are aware of." The Board did not respond to counsel's request for clarification.

Unable to reach a suitable resolution, A.F. requested a fair hearing. The matter was thereafter assigned to the Office of Administrative Law for a hearing before an ALJ. A.F.'s Medicaid benefits continued pending the outcome of the hearing. After conducting two hearings, the ALJ issued his Initial Decision on October 4, 2016. In his factual findings, the ALJ noted:

> The agency conceded at the first day of the hearing that the Banner Life Insurance policy is no longer in issue. The issue was solely whether the term insurance policy issued by Transamerica was in full force and effect and if it had any surrender or cash value.
>
> . . . .
>
> I permitted [A.F.'s] counsel an opportunity to produce confirmation of the expired term life insurance police previously issued by Transamerica. When we reconvened on September 27, 2016, counsel presented a letter from Transamerica dated May 13, 2009, setting forth that the subject policy had lapsed.

After reviewing the relevant regulatory criteria for continued Medicaid eligibility, the ALF concluded:

> Here, the agency made one attempt to obtain information on a term insurance policy that was no longer in effect. The petitioner sought clarification but that request crossed

6

in the mail with the adverse action notice. Even though it is now clear that the insurance policy at issue was a term policy with no cash or surrender value <u>and</u> had lapsed many years ago, the agency refuses to waive a few weeks delay on a redetermination application for a handicapped individual. I have seen this same agency [take] years of back and forth communications with an applicant or client attempting to verify information before taking positive or adverse action. Its actions here can only be characterized as ungenerous.

The ALJ recommended that the Director uphold A.F.'s appeal and reverse the Board's April 28, 2016 denial of redetermination. The Director rejected the ALJ's Initial Decision. In a Final Agency Action dated December 9, 2016, the Director made the following findings:

This is not a situation in which there was an ongoing exchange of information between Petitioner and [the Board]. Petitioner was asked to provide verifications with regard to two very specific requests. If Petitioner was still unsure about what was needed, she could have contacted [the Board] for clarification and an extension of time to provide the documentation. Instead, Petitioner received [the Board's] notice and then waited over a month to contact the County. <u>The credible evidence in the record demonstrates that Petitioner failed to provide the needed information prior to the April 28, 2016 denial of benefits</u>. Without this information, [the Board] was unable to complete its eligibility determination and the denial was appropriate.

[(Emphasis added).]

On appeal from a final State agency determination, we can intervene only if the decision is arbitrary, capricious, unreasonable, Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997), or not supported by substantial credible evidence in the record. N.J. Soc'y for the Prev. of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008). We have articulated this standard of review as follows:

> Under the arbitrary, capricious, or unreasonable standard, our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion.
>
> [Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283-84 (App. Div. 2013).]

The Medicaid redetermination process is carefully regulated. For purposes of redetermination, resources are defined "as any real or personal property which is owned by the applicant (or by those persons whose resources are deemed available to him or her, as described in N.J.A.C. 10:71-4.6) . . . ." N.J.A.C. 10:71-4.1(b). Moreover, "[b]oth liquid and nonliquid resources shall be considered in the determination of eligibility, unless such resources are specifically excluded under the provisions of

N.J.A.C. 10:71-4.4(b)." Ibid. Here, it is undisputable that the insurance policies which prompted the cryptic March 11, 2016 request did not have any bearing on A.F.'s continued eligibility for Medicaid benefits.

Under these undisputed facts, denying redetermination based on A.F.'s failure to provide information which the agency conceded would not have affected its determination of her eligibility to receive benefits is facially an arbitrary and capricious decision. The Director's unexplained statement concerning "the credibility of the evidence" also failed to give proper deference to the ALJ. As our colleague Judge King wrote sixteen years ago: "An agency head reviewing an ALJ's credibility findings relating to a lay witness may not reject or modify these findings unless the agency head explains why the ALJ's findings are arbitrary or not supported by the record." S.D. v. Div. of Med. Assistance & Health Servs., 349 N.J. Super. 480, 485 (App. Div. 2002).

The record shows A.F. was eligible to continue to receive Medicaid benefits at all times relevant to the Board's March 11, 2016 inquiry. The Board conceded before the ALJ that the information it requested, even if timely received, would not have provided a valid basis to deny A.F. Medicaid benefits. Distilled to its essence, the Director's decision to deny Medicaid benefits to a severely disabled person based only on her failure to timely

provide irrelevant information does not promote the Medicaid program salutary policy. Under these circumstances, the Director's decision was arbitrary and capricious.

Reversed and remanded for the Board to reinstate A.F.'s Medicaid benefits. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2163-16T1